UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CITY OF FAIRBORN, OHIO, *et al.*,

        Plaintiffs,                          Case No. 3:22-cv-102

vs.

UNITED STATES ENVIRONMENTAL         District Judge Michael J. Newman
PROTECTION AGENCY, *et al.*,               Magistrate Judge Peter B. Silvain, Jr.

        Defendants.

---

**ORDER: (1) GRANTING DEFENDANT OHIO EPA'S MOTION TO DISMISS (Doc. No. 5); (2) GRANTING DEFENDANT UNITED STATES EPA'S MOTION TO DISMISS (Doc. No. 15); (3) DENYING WITHOUT PREJUDICE TO RENEW DEFENDANTS REENERGY, INC. AND DOVETAIL ENERGY, LLC'S MOTION TO DISMISS (Doc. No. 6); (4) DIRECTING THE REMAINING PARTIES TO UNDERTAKE DISCOVERY IN THE NEXT 60 DAYS LIMITED TO THE APPLICABILITY OF THE DILIGENT PROSECUTION BAR; (5) DIRECTING THE FILING, 30 DAYS THEREAFTER, OF CROSS-MOTIONS ON SUMMARY JUDGMENT AS TO THE DILIGENT PROSECUTION BAR; AND (6) REFERRING THIS CASE TO JUDGE SILVAIN TO SUPERVISE THIS LIMITED DISCOVERY**

---

        This civil case concerns violations of the Clean Air Act ("CAA") alleged by Plaintiffs in Fairborn, Ohio. This case is before the Court on three motions to dismiss brought under Fed. R. Civ. P. 12(b)(1) and (b)(6): (1) Defendant Ohio Environmental Protection Agency's ("Ohio EPA") motion (Doc. No. 5); (2) Defendants Reenergy, Inc. and Dovetail Energy, LLC's (collectively, the "Companies") motion (Doc. No. 6); and (3) Defendant United States Environmental Protection Agency's ("U.S. EPA") motion (Doc. No. 15). Plaintiffs, citizens from the City of Fairborn, Ohio, and Bath Township, Ohio, (collectively, the "Citizens") have responded to the three motions. Doc. Nos. 10, 11, 19. All three Defendants replied. Doc. Nos. 12, 14, 23. On October 5, 2022, the Court heard oral argument on these motions. This matter is ripe for review.

## I.      Background

The Citizens in this case allege that the Companies' use of a waste site spews toxins and pollutants into the air in and around Fairborn.  The Citizens' complaint contains the following factual allegations, which are considered true at this early stage of litigation.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A.  The Waste Site

Starting in 2014, the Companies used the waste site—containing an anaerobic biodigester tank, waste receiving pits, and a concrete storage tank—to produce electricity at their facility at 1156 Herr Road in Fairborn, Ohio to break down organic waste.  Doc. No. 1 at PageID 17. Anaerobic digestion produces electricity and heat using organic waste, such as food or manure. *See* Michael W. Bell, *et al.*, *Ammonia Emissions from an Anaerobic Digestion Plant Estimated Using Atmospheric Measurements and Dispersion Modelling*, Waste Mgmt., June 2016, at 1. Mostly filled with hog manure and food waste, the anaerobic biodigester breaks this waste down in a sealed tank to produce a methane-based gas.  Doc. No. 1 at PageID 8; Doc. No. 6 at PageID 234.  This gas is then burned to create electrical energy.  Doc. No. 1 at PageID 8.  Once waste is fed into the digester, digested solid and liquid waste materials (known as "digestate") discharge from the digester into a 5.5-million-gallon waste pit.  *Id.*

The digestate exudes ammonia.  *Id.* at PageID 2–3.  Ammonia is an air pollutant regulated by Ohio EPA and U.S. EPA.  *Id.*; *see* Ohio Admin. Code 3745-31-01; 40 C.F.R. § 52.1870(c). According to the Citizens, it can irritate the nose, eyes, and lungs, causing spasms and asphyxiation.  *Id.*  at PageID 8.  The Citizens began complaining to authorities about the waste site's smell, and the effects inhaling ammonia can have, in April 2017.  *Id.*  By June 2021, as the Citizens allege in their complaint, Ohio EPA received over 340 complaints about the waste site. *Id.*  The waste site purportedly emits anywhere between 814 and 3,400 pounds of ammonia per

day.  *Id.*

### B.  The Greene County Lawsuit and Consent Decree

Fed up with what they perceived as government inaction, on February 14, 2022, the Citizens sent Ohio EPA, the Companies, and U.S. EPA a 60-day notice of their intent to file a citizen suit under the CAA.  *Id.* at PageID 5.  They alleged in this notice, as they do here, that Defendants are not complying with the CAA; Ohio's state implementation plan ("SIP") regulating air emissions; or other aspects of Ohio environmental law.  *Id.* at PageID 6, 25–26.

The Citizens wrote to Ohio EPA again, on April 13, 2022, requesting to be included in any discussions about the waste site between Ohio EPA and the Companies.  *Id.* at PageID 158.  Ohio EPA responded the next day, declining their request and claiming that negotiation with the Companies was proceeding as planned.  *Id.* at PageID 160.

On April 15, 2022 (at the end of the 60-day period), Ohio EPA sued the Companies in the Greene County Common Pleas Court.  *Id.* at PageID 163.  It alleged that the Companies did not obtain the required permit for the digester, which was subject to regulation because it used non-agricultural waste to produce electricity.  *Id.* at PageID 165.  Because ammonia is an "air contaminant" and the waste tank is a "stationary source" of ammonia under Ohio law, *see* Ohio Admin. Code 3745-31-01, Ohio EPA claimed that the Companies needed a permit to install and operate (a "PTIO") the waste site.  *Id.* at PageID 167 (citing Ohio Rev. Code § 3704.05).

A judge in the Greene County Court of Common Pleas entered a Consent Order and Final Judgment ("Consent Decree") against the Companies on April 25, 2022.  *See* Doc. No. 4.  The Consent Decree permanently required the Companies to fully comply with the Ohio EPA's orders. *Id.* at PageID 206.  Failure to do so subjected them to daily financial penalties.  *Id.* at PageID 208.

The Consent Decree also imposed three primary requirements.  First, it required the Companies to submit a PTIO application for the waste tank.  *Id.* at PageID 207–08.  This included

all the measures that Ohio EPA required the Companies to impose as a condition for receiving their PTIO. *Id.* at PageID 207; *see* Ohio Admin. Code 3745-31-02 (the PTIO requirement). Second, the Companies needed to conduct a Best Available Technology ("BAT") evaluation "to determine what measures are available to reduce the emissions" of ammonia then occurring. *Id.* at PageID 208; *see* Ohio Admin. Code § 3745-31-05(A) (the BAT requirement). "This evaluation [would] include the feasibility of both active and passive measures and operating procedures that minimize emissions including the physical modification and replacement of the waste tank." *Id.* Third, the Companies had to "submit a modeling study that identifies the level of emissions from the waste tank needed to comply with the Ohio EPA Air Toxics Policy" under Ohio law. *Id.*; *see* Ohio Rev. Code § 3704.03(F)(4) (the air toxics emissions modeling study requirement).

### C. The Federal Lawsuit

Ohio EPA's Greene County lawsuit did not satisfy the Citizens. So, before the Consent Decree issued in state court, they sued in this Court on April 18, 2022. Doc. No. 1. Their suit alleges that the Companies, Ohio EPA, and U.S. EPA are violating the CAA and Ohio environmental law. *Id.* at PageID 2. The Citizens claim that the Companies installed the waste site—an air contaminant source—without applying for, and obtaining, a PTIO. *Id.* at PageID 2, 9 (citing Ohio Admin. Code 3745-31-02). The waste site in question, they claim, was never identified in the Companies' prior PTIO as a source of air contaminants. *Id.* at PageID 10. Nor did the Companies submit any emissions calculations for the waste site to justify an exemption from the PTIO requirement. *Id.* Likewise, they allege the Companies had to employ BAT to reduce air emissions, both as a requirement to receive a PTIO and to comply with Ohio environmental law. *Id.* Specifically, the Citizens contend that the Companies' actions "constitute ongoing violations of an emission standard or limitation under the CAA." *Id.* at PageID 2 (first citing 42 U.S.C. § 7602; and then citing *id.* § 7604).

As to Ohio EPA and U.S. EPA, by not enforcing the PTIO and Ohio environmental law requirements against the Companies, the Citizens claim they failed "to perform non[-]discretionary duties[,]" as required under the CAA.  *Id.* at PageID 3, 7.  In particular, Ohio EPA and U.S. EPA, according to the Citizens, "have a non[-]discretionary duty to enforce Ohio's SIP, which includes" the PTIO and BAT requirements.  *Id.* at PageID 10, 13.  The Citizens premise this suit mainly on violations of the CAA, but they also include a pendent state law claim under Ohio law.  *Id.* at PageID 14.  Namely, they contend that the Companies violated Ohio environmental law when they installed and operated a source of toxic air contaminants without identifying the source of the air contaminants and without performing an air toxic modeling study for ammonia.  *Id.*  The Citizens further claim that Ohio EPA violated Ohio law by failing to enforce this as well.  *Id.* at PageID 14–15.

## II.      Legal Standard

"Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  *Hertz Corp. v.* Friend, 559 U.S. 77, 94 (2010) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).  Challenges to the Court's subject-matter jurisdiction under Rule 12(b)(1) come in two forms: facial and factual attacks.  *See McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012).  "A facial attack on the subject-matter jurisdiction . . . questions merely the sufficiency of the pleading."  *Wayside Church v. Van Buren Cnty.*, 847 F.3d 812, 816 (6th Cir. 2017) (quoting *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)).  The Court accepts the allegations in the complaint as true against a facial attack.  *Cooper v. Rapp*, 702 F. App'x 328, 331 (6th Cir. 2017).  For a factual attack, "the [C]ourt can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction."  *McCormick*, 693 F.3d at 658 (quoting *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012)).

5

To survive a Rule 12(b)(6) motion, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint need not have "detailed factual allegations, but the complaint must contain more than conclusions and an unsubstantiated recitation of the necessary elements of a claim." *McCormick*, 693 F.3d at 658 (citing *Twombly*, 550 U.S. at 555). The Court assumes the "veracity of well-pleaded factual allegations and determine whether the plaintiff is entitled to legal relief as a matter of law." *Id.* (citing *Iqbal*, 556 U.S. at 679).

### III.        The Clean Air Act

#### A. State and Federal Enforcement

"The federal Clean Air Act is a model of cooperative federalism." *Sierra Club v. Korleski*, 681 F.3d 342, 343 (6th Cir. 2012) (quoting *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 467 (6th Cir. 2004)). It "creates a complex regulatory scheme designed 'to protect and enhance the quality of the Nation's air resources.'" *Sierra Club v. Jackson*, 648 F.3d 848, 851 (D.C. Cir. 2011) (quoting 42 U.S.C. § 7401(b)(1)). To regulate air pollution, Congress crafted a statutory partnership between the States and federal government.

U.S. EPA first identifies air pollutants and sets national ambient air quality standards ("NAAQS") that maximize public health and well-being. 42 U.S.C. § 7409(b). Next, the States adopt one or more SIPs showing how they will meet and maintain the NAAQS within their territory. *Id.* § 7407(a). States retain "primary responsibility" to control air pollution through SIPs. *Id.* Upon U.S. EPA approval, a state's SIP is added to the *Federal Register* and becomes federal law. *See* 40 C.F.R. § 52.1870 (Ohio's SIP).

If the States do not enforce their SIPs, U.S. EPA can choose to directly enforce them against violators directly. U.S. EPA "may . . . issue an order requiring" violators to "comply" with the

SIP; "issue an administrative penalty"; or "bring a civil action" to force compliance. 42 U.S.C. §§ 7413(a)(1)(A)–(C). Barring that, if U.S. EPA first "finds that any requirement of an approved plan . . . is not being implemented," it must sanction the States. *Id.* § 7509(a)(4).

Under Ohio's SIP, the owners and operators of an air-contaminant source must obtain a PTIO, unless they are otherwise exempt. Ohio Admin. Code §§ 3745-31-02, -15-05, -31-03; 40 C.F.R. § 52.1870(c). Ammonia qualifies as an air contaminant. *See* Ohio Admin. Code § 3745-31-01. Prior to issuing the permit, Ohio EPA must ensure that the source will use BAT to limit emissions. Ohio Admin. Code § 3745-31-02(A); 40 C.F.R. § 52.1870(c). "BAT" generally refers to "any combination of work practices, raw material specifications, throughput limitations, source design characteristics, an evaluation of the annualized cost per ton of air pollutant removed, and air pollution control devices," which Ohio EPA finds fit "to operate satisfactorily in [Ohio] or other states with similar air quality on substantially similar air pollution sources." Ohio Admin. Code § 3745-31-01(T).

### B. Citizen Suit Provision

Ordinary citizens play a role in enforcing the CAA, too. They may sue under the following "citizen suit" provision:

> [A]ny person may commence a civil action on his own behalf—
>
> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the Eleventh Amendment to the Constitution) who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of (A) an emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator[.]

7

42 U.S.C. §§ 7604(a)(1)–(2).[1]  While broad in appearance, this provision has limits.

Section 7604(a)(1) permits citizens to sue for a "violation of (a) an emission standard or limitation . . . or (B) an order issued by the Administrator or State with respect to such a standard or limitation[.]"  *Id.* § 7604(a)(1).  "[A]n emission standard or limitation" is broadly defined.  It includes, as relevant here: "a schedule or timetable of compliance, emission limitation, standard of performance or emission standard"; "a control or prohibition respecting a motor vehicle fuel or fuel additive"; "any condition or requirement under an applicable" SIP; or standards, limitations, or conditions established under any permit issued pursuant to any applicable-EPA-approved SIP.  *Id.* § 7604(f)(1)–(4).

Section 7604(a)(2) permits suit only against "the Administrator."  CAA defines this elsewhere as "the Administrator of the Environmental Protection Agency."  *Id.* § 7602(a).  Generally, CAA affords "the Administrator" several unique federal powers.  *See, e.g.*, *id.* § 7603 (permitting "the Administrator" to sue on behalf of the United States); *id.* § 7625-1 (permitting "the Administrator" to exempt American Territories from certain CAA requirements).

Section 7604(a)(2) is narrow in another sense: citizens may sue U.S. EPA only where "the failure to perform any act or duty under [the CAA] is not discretionary with the Administrator."  This means citizens may sue "the U.S. EPA as a regulator only if it fails to perform a non-discretionary duty."  *Askins v. Ohio Dep't of Agric.*, 809 F.3d 868, 876–77 (6th Cir. 2016) (first citing 33 U.S.C. § 1365(a)(2); and then citing *Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992)) (analyzing Clean Water Act citizen suit provision, which has language identical to the CAA).  "A duty is non[-]discretionary under the CAA if it is 'clear-cut' and requires the Administrator to act by a 'date-certain deadline.'"  *Sierra Club v. Wheeler*, 956 F.3d 612, 616 (D.C. Cir. 2020) (quoting

---

[1] Another section of the CAA, § 7604(a)(3), permits citizen suits under additional circumstances.  This provision is not invoked in the pleadings or any party's argument, so it is inapplicable to this lawsuit.

*Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987), *superseded on other grounds by statute*, Clean Air Act Amendments, Pub. L. No. 101–549, § 707(f), 104 Stat. 2399, 2683 (1990)); *see also, e.g.*, *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 553 n.6 (D.C. Cir. 2015).

Citizen suits premised on § 7604(a) face another hurdle, "the diligent prosecution bar":

> (b) Notice
> No action may be commenced—
> (1) Under subsection (a)(1)— . . .
> > (B) if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any person may intervene as a matter of right.

42 U.S.C. § 7604(b)(1)(B).  Section 7604(b)(1)(B) imposes what is commonly referred to as "the diligent prosecution bar."  *See, e.g.*, *Grp. Against Smog & Pollution, Inc. v. Shenango* (hereinafter, "*G.A.S.P.*"), 810 F.3d 116, 123–25 (3d Cir. 2016).  As the Court explains in further detail below, under the diligent prosecution bar, "when the contours of a private plaintiff's suit and the Government's suit coincide . . . the former must be dismissed."  *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 476 (6th Cir. 2004) (first citing *EPA v. City of Green Forest*, 921 F.2d 1394, 1403–04 (8th Cir. 1990); then citing *Citizens Legal Env't Action Network, Inc. v. Premium Standard Farms, Inc.*, No. 97-6073-SJ-6, 2000 WL 220464, at *17 (W.D. Mo. Feb. 23, 2000); and then citing *Lockett v. EPA*, 319 F.3d 678, 689 (5th Cir. 2003)).

## IV.     Legal Analysis

The Court turns to the three arguments from Ohio EPA, U.S. EPA, and the Companies, respectively.[2]  First, Ohio EPA contends that Sixth Circuit precedent forbids the Citizens from suing it here because the suit only implicates its duties as a regulator, for which it cannot be sued.

---

[2] The Court presently declines to consider Ohio EPA's diligent prosecution argument or U.S. EPA's notice argument, considering it need go no further than the analysis herein to resolve these motions.

Second, U.S. EPA claims that it retains sovereign immunity here because the Citizens do not identify a non-discretionary duty that it purportedly violated.  Third, the Companies—invoking the diligent prosecution bar—claim that Ohio EPA's timely prosecution in Greene County, and the subsequent Consent Decree, bar this suit.

### A.  Claims Against Ohio EPA

The Citizens, naturally, premise this suit on § 7604.  But Ohio EPA offers a compelling argument in support of dismissal: enforcing the BAT and PTIO requirements are regulatory duties, and it cannot be sued as a regulator.  Doc. No. 5 at PageID 216.  Because the Citizens sue, generally, to require Ohio EPA to enforce a requirement in Ohio's SIP against the Companies, then Ohio EPA contends that this suit is barred by binding Sixth Circuit precedent.  *Id.* at PageID 219, 221.  In response, the Citizens contend that the CAA permits them to sue States under § 7604(a)(2) for failure to perform a non-discretionary duty.  Doc. No. 10 at PageID 254, 256–58.  In reply, Ohio EPA indicates that it cannot be sued under § 7604(a)(2), as only the U.S. EPA may be sued under that provision.  Doc. No. 12 at PageID 288–91.

The Citizens' reliance on § 7604(a)(2) is misplaced.  "In interpreting a statute, [the Court] begin[s] with its text."  *Binno v. Am. Bar Ass'n*, 826 F.3d 338, 346 (6th Cir. 2016) (citing *BedRoc, Ltd. v. United States*, 541 U.S. 176, 183 (2004)).  Its "inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'"  *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 240 (1989)) (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).  "When 'a statute includes an explicit definition' of a term, '[the Court] must follow that definition, even if it varies from a term's ordinary meaning.'"  *Van Buren v. United States*, --- U.S. ---, 141 S. Ct. 1648, 1657 (2021) (quoting *Tanzin v. Tanvir*, --- U.S. ---, 141 S. Ct. 486, 490 (2020)).  The CAA defines "Administrator" as "the Administrator of the Environmental Protection Agency."  42 U.S.C.

§ 7602(a).  Quite unambiguously, that definition refers only to U.S. EPA.

Context further articulates this unambiguous meaning.  *See Gundy v. United States*, --- U.S. ---, 139 S. Ct. 2116, 2126 (2019) ("[S]tatutory interpretation [is] a 'holistic endeavor' which determines meaning by looking not to isolated words, but to text in context . . ." (quoting *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988))).  Other definitions in the CAA indicate the bifurcation between "the Administrator" and "States."  Section 7602(d) separately defines "State."  *Id.* § 7602(d).  The term "State" frequently appears in provisions identifying how U.S. EPA and States—through their own environmental agencies—coordinate with each other to address various issues.  *See, e.g.*, *id.* § 7603 (noting that before U.S. EPA can file an emergency lawsuit to immediately restrain alleged air polluters, "the Administrator shall consult with appropriate State and local authorities and attempt to confirm the accuracy of the information on which the action proposed to be taken is based"); *id.* § 7619(b)(2) ("[A]fter consultation with Federal land managers and *State air pollution control agencies*, the Administrator shall publish . . . proposed regulations governing the review . . . of air quality monitoring data influenced by exceptional events" (emphasis added)).

Likewise, the CAA references how "the Administrator" may act in certain scenarios.  For example, "the Administrator . . . may bring suit on behalf of the United States" in certain emergencies.  *Id.* § 7603; *see also id.* § 7605 (identifying how "the Administrator" must request that the U.S. Attorney General represent him or her in CAA litigation).  Or consider that "the Administrator" is solely responsible for granting CAA "exemptions" in American Territories.  *Id.* § 7625-1; *see also id.* § 7601(d)(1)(A)–(B) (noting "the Administrator" can "treat Indian tribes as States" and may "provide any such Indian tribe grant and contract assistance" as specified under the CAA).  While mindful that a term's definition "readily yields to context," this additional

context here—listing traditionally federal powers that the Administrator may employ—shows that "the Administrator" means U.S. EPA's Administrator. *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014) (internal quotation marks omitted) (quoting *Env't Def. v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007)).

Taken together, the definition under § 7604(a)(2), and its surrounding context, proves that "the Administrator" in § 7604(a)(2) only refers to U.S. EPA. Accordingly, the Citizens cannot sue Ohio EPA under § 7604(a)(2). *See Korleski*, 681 F.3d at 348 ("Specifically, 42 U.S.C. § 7604(a)(2) provides that 'any person may commence a civil action on his own behalf . . . against the Administrator [of U.S. EPA]'" (alteration in original) (quoting 42 U.S.C. § 7604(a)(2))); *United States v. Stauffer Chem. Co.*, 684 F.2d 1174, 1185 (6th Cir. 1982) (noting that § 7604(a)(2) does not include other officers in U.S. EPA besides "the named" Administrator).[3]

Plausibly construing the complaint in their favor, the Citizens seem to allege that they can sue Ohio EPA here under § 7604(a)(1), as they claim that Ohio EPA has violated emission standards by allowing the Companies to operate the waste site without a PTIO. *See, e.g.*, Doc. No. 1 at PageID 2–3; Doc. No. 10 at PageID 256 (responding to Ohio EPA's motion to dismiss). The Sixth Circuit addressed this issue in *Korleski*. 681 F.3d at 342. In *Korleski*, after Ohio passed legislation permitting Ohio EPA to issue permits to smaller emission sources that do not employ BAT, the Sierra Club sued Ohio EPA for not enforcing its SIP's BAT requirement (Ohio Admin. Code 3745-31-05(A)) against small emission sources. *Id.* at 344. The Sierra Club claimed that this constituted a "violation of an emission standard or limitation" under § 7604(a)(1). *Id.*

The Sixth Circuit focused on what "violation" means. *Id.* at 346. They acknowledged the

---

[3] At oral argument, Plaintiff's counsel implied that this Court should not rely on Sixth Circuit *dicta* to come to this conclusion. True, *dictum* alone is not binding. *See, e.g.*, *Williams v. Anderson*, 460 F.3d 789, 811 (6th Cir. 2006). But the underlying reasoning in these cases provides persuasive reasons that "Administrator" unambiguously refers to U.S. EPA.

Sierra Club's argument: "if the SIP requires the State to administer the BAT regime, and the State fails to administer it, then the State has 'violated' that requirement." *Id.*  But the Sixth Circuit read the word "violation" in light of *Bennett v. Spear*, 520 U.S. 154 (1997), concerning the identical citizen-suit provision of the Endangered Species Act ("ESA").  *Id.*  The Supreme Court in *Bennett* held that a "violation" did not "refer to failure by the Secretary or other federal officers and employees to perform their duties in administering the ESA."  *Bennett*, 520 U.S. at 173–74.  To come to this conclusion, the Supreme Court found that the canon against surplusage, coupled with context, prevented it from reading "violation" in the ESA to authorize absurd results that could subject government officials to criminal penalties for failing to administer the ESA.  *See id.*

Relying on *Bennett*, the Sixth Circuit similarly found that the CAA did not permit citizens to sue Ohio EPA for not enforcing its SIP, as Ohio was not a regulated entity that could be sued for "violations" of emissions standards.  *Korleski*, 681 F.3d at 346–49.  Both the CAA and ESA contained identical language forbidding lawsuits against regulatory agencies for failing to perform regulatory duties—the ESA preventing suits against the federal government for non-enforcement, and the CAA preventing suits against the States for non-enforcement.  *Id.* at 347–48.  Allowing the Sierra Club to immediately sue would undermine the CAA's sanctions regime, which gives Ohio eighteen months "to cure its failure to implement a requirement in a SIP, after which the Administrator can impose sanctions in order to induce, but not to compel, the State to implement the requirement."  *Id.* at 350 (citing 42 U.S.C. § 7509(a)).  In effect, permitting the Sierra Club's suit would have incorrectly allowed it "to compel" Ohio to act through federal law.  *Id.* (emphasis deleted) (citing *New York v. United States*, 505 U.S. 144, 188 (1992)).  Thus, the Sixth Circuit reversed and ordered the district court to dismiss the complaint.  *Id.* at 353.

For these reasons, *Korleski* bars the citizen suit against Ohio EPA here.  Turning away

13

from their primary argument under § 7604(a)(2), the Citizens also claim that Ohio EPA is committing "violations" by not enforcing the PTIO and BAT requirements against the Companies. *See* Doc. No. 1 at PageID 2–3; Doc. No. 10 at PageID 258. However, again applying *Korleski*, these claims improperly target Ohio EPA's actions as a regulator, empowered to enforce its SIP against regulated parties at its discretion. *See Korleski*, 681 F.3d 346–49.

Indeed, such suits alleging a State's failure to enforce its SIP are non-cognizable, so the Citizens' claims under the CAA—and against Ohio EPA—merit dismissal. *See, e.g.*, *Bennett*, 520 U.S. at 173 (noting that the analogous citizen-suit provision in the ESA was "unlikely to refer to failure by [the federal government] to perform their duties in administering the ESA"); *Korleski*, 681 F.3d at 350–51. As shown in *Korleski*, the structure and text of the CAA contemplate enforcement against polluters, not compulsion of the States who regulate it. *See Korleski*, 681 F.3d at 350–51; *see also Askins*, 809 F.3d at 876 ("The citizen suit serves only as a backup, 'permitting citizens to *abate* pollution when the government cannot or will not command compliance'" (emphasis in original) (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 62 (1987))).

The Citizens' pendent state law claim against Ohio EPA also must be dismissed for two reasons. First, because it, too, alleges that Ohio EPA violated a "non[-]discretionary duty" and was required to enforce its SIP against the Companies, it fails for the reasons stated. Second, this Court may decline to exercise supplemental jurisdiction where "the claim raises a novel or complex issue of State law[.]" 28 U.S.C. § 1367(c)(1). The Court has been unable to find any case in which citizens have sued Ohio EPA under Ohio's air pollution law for failure to enforce Ohio's SIP. *See generally* Ohio Rev. Code § 3704.03 (outlining Ohio EPA's powers in enforcing Ohio's SIP without providing for citizen enforcement measures); *id.* § 3704.06 (providing only

that the Ohio Attorney General may prosecute under Ohio law for violating air pollution laws). This indicates that such a basis for jurisdiction is novel to Ohio courts, so the Court— in the interest of comity—declines to be the first court to create a citizen's private right of action against Ohio EPA.  *See, e.g.*, *Beechy v. Cent. Mich. Dist. Health Dep't*, 274 F. App'x 481, 482 (6th Cir. 2008) (finding that, considering "the paucity of decisions interpreting" the state statute at issue, the district court did not abuse its discretion in not exercising supplemental jurisdiction over a novel state law claim).  Therefore, both claims against Ohio EPA are dismissed.

### B.  Claims Against U.S. EPA

U.S. EPA argues that this Court lacks subject matter jurisdiction because it has not waived sovereign immunity as to the Citizens' claim. Doc. No. 15 at PageID 325.  Particularly, U.S. EPA contends that the Citizens have not plausibly alleged, pursuant to § 7604(a)(2), which non-discretionary duty U.S. EPA has violated.  *Id.* at PageID 328.  Because the enforcement duties are discretionary, then U.S. EPA argues that it is entitled to sovereign immunity.  *Id*

The Citizens contend that U.S. EPA has violated a non-discretionary duty in failing to stop the Companies' operation of the waste site without the PTIO or using BAT.  Doc. No. 1 at PageID 10, 13; Doc. No. 19 at PageID 347–48.  They claim that U.S. EPA has incorporated Ohio's SIP into federal law.  *See* Doc. No. 19 at PageID 347–48.  If so, this means that Ohio's SIP is federally enforceable in this Court, so the Citizens conclude that U.S. EPA is required to issue a PTIO and BAT as mandated under Ohio law.  *See id.*  The Citizens emphasize that U.S. EPA has no discretion in deciding whether an air contaminant source may operate without a PTIO, and it must prohibit the operation of a facility before its owner meets these requirements.  *See id.*

As previously mentioned, the federal government conditionally waives its sovereign immunity under CAA's citizen-suit provision.  *See Wheeler*, 956 F.3d at 616; *see also United States v. Tenn. Air Pollution Control Bd.*, 185 F.3d 529, 533–35 (6th Cir. 1999) (noting that the

federal government waives its sovereign immunity for CAA citizen suits alleging past violations of state air pollution laws).  This waiver, however, is made contingent by the maxim that any waiver of sovereign immunity must be "unequivocally expressed in statutory text."  *Lane v. Pena*, 518 U.S. 187, 192 (1997); *see also, e.g.*, *Dep't of Energy*, 503 U.S. at 615.  Therefore, plaintiffs suing the federal government under CAA—per the text of the statute—must allege a violation of "any duty . . . which is not discretionary with the Administrator," *i.e.*, a non-discretionary duty. 42 U.S.C. § 7604(a)(2).  A non-discretionary duty must be "clear-cut and require[] the Administrator to act by a date-certain deadline."  *Wheeler*, 956 F.3d at 616 (quotations omitted); *see also, e.g.*, *Askins*, 809 F.3d at 876–77; *WildEarth Guardians v. McCarthy*, 772 F.3d 1179, 1182 (9th Cir. 2014); *Murray Energy Corp. v. Admin. of Envt'l Prot. Agency*, 861 F.3d 529, 535 (4th Cir. 2017).  "This interpretation of [§ 7604(b)] is consistent with the requirement that 'a waiver of sovereign immunity must be "unequivocally expressed" in the statutory text' and ambiguities 'construed in favor of immunity.'"  *Wheeler*, 956 F.3d at 616 (quoting *FAA v. Cooper*, 566 U.S. 284, 290 (2012)).

The Citizens' conclusion—that U.S. EPA had a non-discretionary duty to require the Companies to obtain a PTIO and install BAT—is not apparent in the CAA's text.  From the outset, the Citizens do not cite a provision of the CAA that they believe forces U.S. EPA to do anything. They, instead, assert that, under its broad authority, U.S. EPA has a "statutorily mandated duty of ensuring that air contaminant emissions that are required to have [PTIOs] do, in fact, have those permits in hand prior to commencing construction and/or operation."  Doc. No. 19 at PageID 347; *see also* Doc. No. 1 at PageID 10, 13 ("Defendant[] . . . US EPA ha[s] a non[-]discretionary duty to enforce Ohio's SIP").

But the CAA imposes no "clear-cut" duty to U.S. EPA to generally enforce a SIP.  Nor

does such a duty become apparent after construing the Citizens' complaint to plausibly identify a relevant statutory provision. *See* Doc. No. 1 at PageID 10, 13. The general federal enforcement provision that provides U.S. EPA with power to enforce a SIP, 42 U.S.C. § 7413, is discretionary in two ways. First, U.S. EPA has to "find[] that any person has violated" a requirement in a SIP prior to bringing enforcement. *Id.* §§ 7413(a)(1)–(3), (5). This signals non-discretionary action. *See Askins*, 809 F.3d at 876–77 (citizens could not sue under the Clean Water Act where the U.S. EPA had to first choose to hold a hearing to determine a State was violating that provision of the Clean Water Act); *City of Seabrook v. Costle*, 659 F.2d 1371, 1374–75 (5th Cir. Unit A Oct. 1981) (noting that the requirement that the U.S. EPA first "find" a violation made § 7413 a non-discretionary duty). Second, although U.S. EPA must notify the violator and the State where the plan applies after it officially finds a violation, it "may" choose to enforce the SIP's requirements and pursue remedies against the violators. *Id.* §§ 7413(a)(1)(A)–(C); *see, e.g.*, *Ky. ex rel. Hancock v. Ruckelshaus*, 497 F.2d 1172, 1177 (6th Cir. 1974) (affirming district court's finding that U.S. EPA's failure to take action against federal agency for failing to obtain state permits to operate facilities emitting air pollution was unreviewable); *City of Yakima v. Surface Transp. Bd.*, 46 F. Supp. 2d 1092, 1099–100 (E.D. Wash. 1999) (noting § 7413's discretionary nature); *cf. Ohio Pub. Int. Rsch. Grp., Inc. v. Whitman*, 386 F.3d 792, 796–97 (6th Cir. 2004) (noting, in a CAA case, that courts may not review instances where an agency chooses not to invoke an enforcement mechanism). The permissive term "'may' does not just suggest discretion, it *clearly* connotes it." *Biden v. Texas*, --- U.S. ---, 142 S. Ct. 2528, 2541 (2022) (quotations omitted) (emphasis in original). Thus, this provision—identifying that U.S. EPA "may" enforce SIP violations—signals discretionary action, so there is no mandatory duty to enforce that is "readily ascertainable" from this non-mandatory language. *WildEarth Guardians*, 772 F.3d at 1182; *see also, e.g.*, *Sierra Club*

*v. U.S. EPA*, 475 F. Supp. 2d 29, 32 (D.D.C. 2007) (finding discretionary duty under CWA where 33 U.S.C. § 1342(d)(4) provided that the Administrator "may" issue a permit).[4]

Ultimately, the Citizens do not point to a non-discretionary duty—as identified in the CAA's text—that would compel U.S. EPA to enforce Ohio's SIP against would-be violators. *See, e.g.*, *Askins*, 809 F.3d at 875. Such compulsion would be a particularly bold step, considering the deeply rooted, historical recognition of a federal agency's prosecutorial discretion. *See, e.g.*, *Sierra Club v. Whitman*, 268 F.3d 898, 903 (9th Cir. 2001) ("It is particularly difficult to review a federal agency's *failure* to take enforcement actions" (emphasis in original) (citing *Heckler v. Chaney*, 470 U.S. 821, 831 (1985))); *City of Seabrook*, 659 F.2d at 1374–75; *City of Highland Park v. Env't Prot. Agency*, No. 2:16-cv-13840, 2018 WL 4699308, at *2 (E.D. Mich. Sept. 29, 2018) (dismissing Clean Water Act claims against U.S. EPA concerning "[d]ecisions . . . not to enforce" Clean Water Act regulations against regulated parties); *cf. Town of Castle Rock v. Gonzales*, 545 U.S. 748, 761–62 (2005) (acknowledging the "deep-rooted nature of law-enforcement discretion, even in the presence of seemingly mandatory legislative commands" (citing *Chicago v. Morales*, 527 U.S. 41 (1999))); *Arizona v. Biden*, 40 F.4th 375, 392 (6th Cir. 2022) ("[T]he Executive Branch has considerable enforcement discretion in deploying limited

---

[4] Another CAA section, § 7509, would not give the Citizens a separate means to sue. That provision provides that, if U.S. EPA "finds that any requirement of an approved plan . . . is not being implemented," then U.S. EPA "shall" impose a sanction after an eighteen-month period. 42 U.S.C. § 7509(b)(4). While "'shall' . . . is an 'imperative' term[,]" *Korleski*, 681 F.3d 342, 353 (6th Cir. 2012) (quoting *Bennett*, 520 U.S. at 175), it only becomes mandatory after U.S. EPA "finds" that a State is not implementing any provision of its plan. *See* 42 U.S.C. §§ 7509(a)(1)–(4). The Citizens, in their complaint, do not allege that U.S. EPA has ever made such a finding, as they only argue that U.S. EPA "ha[s] a non[-]discretionary duty to enforce Ohio's SIP[.]" Doc. No. 1 at PageID 10, 13. This ignores that any "non-discretionary action does not kick in until *after*" U.S. EPA finds that Ohio is violating its SIP. *Askins*, 809 F.3d at 876–77 (emphasis in original); *see also City of Seabrook*, 659 F.2d at 1374–75. Moreover, even if the Citizens plausibly raised § 7509 as their statutory anchor, eighteen-months have not passed since U.S. EPA would have presumably learned of the violation when the Citizens first sent notice to the U.S. EPA in April 2022. *See* Doc. No. 1 at PageID 5. This raises ripeness concerns: yet another reason why it could not serve as the Citizens' basis for their suit here.

resources to address its policy challenges"). The Court refuses to disrupt this long-standing tradition, in the absence of a clear statutory command to the contrary.  *See, e.g.*, *Whitman*, 268 F.3d at 904–05.

More importantly, the very provision cited in the Citizens' opposition to the motion to dismiss—42 U.S.C. § 7410—does not even give U.S. EPA the authority to issue PTIOs or require the Companies to employ BAT, as that authority rests solely with the States.  *See, e.g.*, 40 C.F.R. § 51.160 (noting that a State's SIP must provide "means by which *the State or local agency* responsible for final decisionmaking on an application for approval will prevent" installation of structures with the potential to adversely impact the air (emphasis added)); Ohio Admin. Code §§ 3745-31-02 (noting that "the director" of Ohio EPA is responsible for issuing a PTIO), 3745-31-05(A)(3) (noting that "the director" of Ohio EPA is responsible for ensuring entities comply with the BAT requirement).  Rather, the sensible reading of this statute is that it simply outlines how the States adopt a SIP; it does not disrupt U.S. EPA's discretion under § 7413.

While the Citizens contend that they are not asking U.S. EPA to generally enforce the law, their complaint belies this contention.  *Compare* Doc. No. 1 at PageID 10 ("Defendants . . . have a non[-]discretionary duty to enforce Ohio's SIP") *and id.* at PageID 13 (same), *with* Doc. No. 21 at PageID 359 ("Plaintiffs are not seeking to force EPA to commence an enforcement action").  It is difficult to speculate what injunctive relief (as sought in the complaint) this Court could order other than compelling U.S. EPA to enforce Ohio's SIP against the Companies and impose the BAT and PTIO requirements.  *See, e.g.*, Doc. No. 1 at PageID 15–16; *Heckler*, 470 U.S. at 831.  That would run contrary to the CAA and Ohio environmental law, considering both make it clear that Ohio, not the federal government, is responsible for issuing a PTIO and imposing the BAT requirement.  *See* 40 C.F.R. §§ 51.160–51.162; Ohio Admin. Code §§ 3745-31-02, -05.

This does not mean that U.S. EPA is totally immune from citizen suits.  Far from it.  As countless cases identify, U.S. EPA can be sued under the CAA for violations of non-discretionary duties, *i.e.*, those with a legislative command and which impose a clear-cut, date-certain deadline within which to act.  *See Askins*, 809 F.3d at 876–77; *accord Env't Def. Fund v. Thomas*, 870 F.2d 892, 896–900 (2d Cir. 1989) (finding that 42 U.S.C. § 7409(d) imposed non-discretionary duty to promulgate revisions to NAAQS every five years); *Sierra Club v. U.S. EPA*, 850 F. Supp. 2d 300, 303–04 (D.D.C. 2012) (finding that 42 U.S.C. § 7412(e)(1) imposed mandatory, date-certain requirement to promulgate regulations governing the emissions of air pollutants from brick kilns and clay products manufacturing); *WildEarth Guardians v. Jackson*, No. 11-CV-00001, 2011 WL 4485964, at *6 (D. Colo. Sept. 27, 2011) (finding that 42 U.S.C. § 7410 required the U.S. EPA to promulgate Federal Implementation Plans within six years).  The infirmity in the Citizens' suit here is that—unlike the cases cited—they point to no such actionable, mandatory, or date-certain duty in their complaint that U.S. EPA violated.

Considering this, and after reviewing the CAA's plain text, the Citizens fail to plausibly allege that U.S. EPA owes a non-discretionary duty to enforce Ohio's SIP against the Companies. Thus, the claims against U.S. EPA cannot proceed because they are barred by sovereign immunity, and are dismissed for lack of subject matter jurisdiction.

### C.  The Diligent Prosecution Bar

The Companies levy one argument supporting dismissal: Ohio EPA is diligently prosecuting the alleged violations.  Doc. No. 6 at PageID 233.  The complaint filed in Greene County, the Companies say, was pending on April 15, 2022—before the Citizens filed their suit on April 18, 2022.  *Id.* at PageID 239–40.  Likewise, the Companies contend that the Consent Decree covers the PTIO, BAT, and air toxics modeling requirements that the Citizens seek to impose here.  *Id.* at PageID 241–44.  The Citizens advance two counterarguments: (1) the standard

of review here is under Fed. R. Civ. P. 12(b)(6), not 12(b)(1); and (2) the diligent prosecution bar does not apply here.[5]

### 1.     Jurisdictional or Non-jurisdictional

The Citizens allege that the diligent prosecution bar is a non-jurisdictional defense, meaning that the Court cannot entertain a Fed. R. Civ. P. 12(b)(1) motion on this basis.  Doc. No. 10 at PageID 258–59.  Instead, they argue that the Court should view this motion through the lens of Fed. R. Civ. P. 12(b)(6).  *Id.*  This distinction matters because the standard for reviewing a Rule 12(b)(6) is more favorable for plaintiffs.  *See, e.g.*, *G.A.S.P.*, 810 F.3d 121–23.

Currently, no Sixth Circuit case definitively establishes whether the CAA's diligent prosecution requirement is jurisdictional.   There is a "distinction between jurisdictional prescriptions and non[-]jurisdictional claim-processing rules, which 'seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.'" *Fort Bend County v. Davis*, --- U.S. ---, 139 S. Ct. 1843, 1849 (2019) (quoting *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)).   Because "[o]nly Congress may determine a lower federal court's subject matter jurisdiction," *Hamer v. Neighborhood Hous. Servs. of Chi.*, --- U.S. ---, 138 S. Ct. 13, 17 (2017), then unless it "passes a statute that unambiguously restricts the adjudicatory authority of the federal courts, . . . the restriction will be treated as mandatory but not jurisdictional." *Maxwell v. Dodd*, 662 F.3d 418, 421 (6th Cir. 2011). Indeed, the Court must review "the condition's text, context, and relevant historical treatment" to determine whether it is jurisdictional. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010).

---

[5] The Citizens claim that the Companies have not attached anything to their Rule 12(b)(6) motion, so this Court may not consider the Consent Decree at this stage without converting this motion into a Rule 56 summary judgment request. Doc. No. 11 at PageID 275.  Even if the Consent Decree is not attached to the pleadings or motions, it is still a matter of public record that can be considered at the motion to dismiss stage.  *See New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2002).

If a provision is not jurisdictional, then it is treated as a claims-processing rule that "promote[s] the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Henderson*, 562 U.S. at 435.

Courts confronted with this issue in recent cases agree that the diligent prosecution requirements in the CAA and comparable statutes are non-jurisdictional. *See G.A.S.P.*, 810 F.3d at 123–25; *Naturaland Tr. v. Dakota Fin. LLC*, 41 F.4th 342, 345–48 (4th Cir. 2022) (Clean Water Act); *Cebollero-Bertran v. P.R. Acqueduct & Sewer Auth.*, 4 F.4th 63, 71–72 (1st Cir. 2021) (same); *La. Env't Action Network v. City of Baton Rouge*, 677 F.3d 737, 748 (5th Cir. 2012) (same); *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 491–92 (7th Cir. 2011) (Resource Conservation and Recovery Act ("RCRA")).  The Court concurs, considering the diligent prosecution provision's context, plain text, and historical treatment.

Congress placed the diligent prosecution bar in the "notice" section separately from the section titled "jurisdiction." *Compare* 42 U.S.C. § 7604(a) (labelled "[a]uthority to bring action; jurisdiction"), *with id.* § 7604(b) (labelled "[n]otice"); *see also, e.g.*, *La. Env't Action Network*, 677 F.3d at 748.  Through this placement beside the 60-day notice provision, this context signals legislative intent to make the diligent prosecution bar "a typical claims-processing rule[,]" which guides litigation in an orderly manner. *La. Env't Action Network*, 677 F.3d at 748 (quotation marks and citations omitted).  Nor does the diligent prosecution bar's text refer to itself as jurisdictional or include "any other language indicating an intent that the requirement be jurisdictional." *Cebollero-Bertran*, 4 F.4th at 71 (citation omitted); *see also, e.g.*, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515–16 (2006) (rejecting reading of Title VII's numerosity requirement to be jurisdictional where Congress did not "clearly state[] that" it was "jurisdictional"); *G.A.S.P.*, 810 F.3d at 123–25.  Finally, there is no "long line of [Supreme Court] decisions left undisturbed by

22

Congress" treating "a similar requirement as jurisdictional." *Henderson*, 562 U.S. at 436; *see La. Env't Action Network*, 677 F.3d at 749.

In sum, all three factors indicate that the CAA's diligent prosecution bar is non-jurisdictional. *See, e.g.*, *Reed Elsevier, Inc.*, 559 U.S. at 163–66 (holding that the Copyright Act's registration requirement is non-jurisdictional where the provision did not clearly state that it was jurisdictional and was separate from the Act's subject matter jurisdiction provision). Therefore, Fed. R. Civ. P. 12(b)(6) provides the applicable standard.

### 2. Applicability of the Diligent Prosecution Bar

The CAA notes that citizens may not sue a violator if the government "has commenced and is diligently prosecuting a civil action . . . to require compliance with the standard, limitation, or order[.]"  42 U.S.C. § 7604(b)(1)(B).  Under this doctrine, "[g]enerally speaking, when the contours of a private plaintiff's suit and the Government's suit coincide . . . the former must be dismissed." *Ellis*, 390 F.3d at 476 (6th Cir. 2004) (citations omitted).  "Diligence 'is presumed,' and 'the burden for proving non-diligence is heavy.'" *Cox v. Bd. of Cnty. Comm'rs of Franklin Cnty.*, 436 F. Supp. 3d 1070, 1081 (S.D. Ohio 2020) (first quoting *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008); and then quoting *Ohio Valley Env't Coal., Inc. v. Maple Coal Co.*, 808 F. Supp. 2d 868, 883 (S.D. W. Va. 2011)).  In the context of a consent decree, courts have framed the inquiry this way: "if the consent decree is a reasonable settlement likely to bring about compliance with the Act, it also demonstrates diligent prosecution." *United States v. Metro. Water Reclamation Dist. of Greater Chi.*, 792 F.3d 821, 825 (7th Cir. 2015) (Easterbrook, J.); *see also, e.g.*, *Piney Run*, 523 F.3d at 459 ("[E]nforcement action will be considered diligent where it is capable of requiring compliance with the Act and is in good faith calculated to do so" (internal quotation marks omitted)).  Courts take this deferential view because, as the Sixth Circuit has stated, they ought not "second-guess[] . . . the EPA's assessment

23

of an appropriate remedy . . . after the entry of [consent] decrees." *Ellis*, 390 F.3d at 477.  In essence, this provision permits citizens to sue "where the EPA has failed to do so, not where the EPA has acted but has not acted aggressively enough in the citizens' view." *Id.* (internal quotation marks omitted).

Courts applying the diligent prosecution bar essentially ask two questions: after comparing the consent decree's terms to the terms of the citizens' complaint, *see G.A.S.P.*, 810 F.3d at 126, (1) do the complaint and consent decree both seek compliance with "the very same standard, order, or limitation," *Cox*, 436 F. Supp. 3d at 1080, meaning "the contours of [both suits] coincide" so much so that "the former must be dismissed," *Ellis*, 390 F.3d at 461; and (2) is the consent decree "a reasonable settlement likely to bring about compliance with the" CAA.  *Metro. Water Reclamation Dist. of Greater Chi.*, 792 F.3d at 825.

Whether a prosecution is "diligent" is an issue more suitable to consider at summary judgment, with the benefit of a more complete record.  *See, e.g.*, *Jones v. City of Lakeland*, 224 F.3d 518, 522–23 (6th Cir. 2000) (*en banc*) (reversing district court's grant of motion to dismiss on the diligent prosecution bar under the Clean Water Act because, in part, the record was incomplete).  That said, this case should not languish if the parties pursue discovery on matters not pertinent to the applicability of the diligent prosecution bar.  Therefore, the best course of action is to impose limited discovery into whether the Consent Decree issued by the Greene County Common Pleas Court: (1) seeks compliance with the identical standards at issue in the present lawsuit; and (2) whether the Consent Decree is a reasonable settlement likely to bring about compliance with these standards.  *See Ellis*, 390 F.3d at 461; *Metro. Water Reclamation Dist. of Greater Chi.*, 792 F.3d at 825; *Cox*, F. Supp. 3d at 1080.[6]

---

[6] The Sixth Circuit is poised to address the diligent prosecution bar in a recent Clean Water Act case.  *Cox v. Bd. of Cnty. Comm'rs of Franklin Cnty.*, No. 2:18-cv-1631, 2021 WL 2042629, at *1 (S.D. Ohio May

Accordingly, the Court will order the parties to conduct limited discovery on the applicability of the diligent prosecution bar. The Court will revisit this issue after the parties complete this limited discovery, at which time the parties shall file cross-motions for summary judgment. To that extent, the Companies' motion to dismiss is presently denied, but the Court will consider their diligent prosecution bar argument once more after limited discovery.

### V.  Conclusion

The Court empathizes with the Citizens in this case. Our democracy is strengthened by citizens seeking to vindicate their rights in court, including suing the state and federal governments when appropriate to do so. But this Court is bound to apply the law as set forth by the Constitution and federal statutes, as these laws are the cornerstones that hold our nation together. This Court's duty "to say what the law is" sometimes includes barring suits against the government where Congress has prevented the government from being sued. *Marbury v. Madison*, 5 U.S. 137, 177 (1803). Such is the case here.

Accordingly, the Court: (1) **GRANTS** Ohio EPA's motion to dismiss; (2) **GRANTS** U.S. EPA's motion to dismiss; (3) **DENIES WITHOUT PREJUDICE** the Companies' motion to dismiss; (4) **ORDERS** the parties to conduct limited discovery, within **60 DAYS of the issuance of this Order**, solely pertinent to the diligent prosecution bar; and (5) **AUTHORIZES** cross-motions for summary judgment, to be filed **30 DAYS thereafter**, limited to the diligent prosecution bar. This case is **REFERRED** to Judge Silvain to supervise this limited discovery.

**IT IS SO ORDERED.**

  March 13, 2023                                s/Michael J. Newman                    
                                               Hon. Michael J. Newman
                                               United States District Judge

---

21, 2021) (appeal filed, July 28, 2021). More time here means more time for the Sixth Circuit to issue guidance on this issue.