UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

CITY OF FAIRBORN, OHIO, *et al.*,

    Plaintiffs,

vs.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, *et al.*,

    Defendants.

Case No. 3:22-cv-102

District Judge Michael J. Newman
Magistrate Judge Peter B. Silvain, Jr.

_____

**ORDER: (1) DENYING PLAINTIFFS' MOTION TO STRIKE (Doc. No. 61); (2) GRANTING THE JOINT MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS REENERGY, INC. AND DOVETAIL ENERGY, LLC (Doc. No. 47); (3) DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (Doc. No. 49); AND (4) TERMINATING THIS CASE ON THE DOCKET**
_____

This civil case concerns violations of the Clean Air Act ("CAA") alleged by Plaintiffs in Fairborn, Ohio. This case is before the Court on two cross motions for summary judgment: the first by Plaintiffs who are citizens of Fairborn, Ohio and Bath Township, Ohio (collectively, "Citizens") (Doc. No. 49); the second by Defendants Reenergy, Inc. and Dovetail Energy, LLC (collectively, "Companies"), the only two Defendants remaining here (Doc. No. 47). The Citizens and the Companies have responded and replied to these motions. Doc. Nos. 52, 53, 54, 55. Thus, these motions are ripe for review.

After the cross motions for summary judgment were filed, the Companies filed a notice with the Court that the Consent Order and Final Judgment Entry issued by the Greene County, Ohio Court of Common Pleas was amended on September 22, 2023. Doc. No. 60. The Citizens moved to strike this notice (Doc. No. 61), and the Companies responded (Doc. No. 62). Therefore, the motion to strike is also ripe for review.

## I. BACKGROUND

The Citizens in this case allege that the Companies' use of a waste site emits toxins and pollutants into the air in and around Fairborn. The Court has already described the facts of this case in an earlier order when ruling on motions to dismiss. Doc. No. 41. Therefore, only the facts necessary to decide the pending motions are enumerated below.

### A. The Greene County Lawsuit and Consent Decree

On February 14, 2022, the Citizens sent Ohio EPA, the Companies, and U.S. EPA a 60-day notice of their intent to file a citizen suit under the CAA. Doc. No. 1 at PageID 5. They alleged in this notice, as they do here, that Defendants are not complying with the CAA, Ohio's state implementation plan regulating air emissions, and other aspects of Ohio environmental law. *Id.* at PageID 6, 25–26.

On April 15, 2022 (at the end of the 60-day period), Ohio EPA sued the Companies in the Greene County Common Pleas Court. *Id.* at PageID 163. It alleged that the Companies did not obtain the required permit for the digester, which was subject to regulation because it used non-agricultural waste to produce electricity. *Id.* at PageID 165. Because ammonia is an "air contaminant" and the waste tank is a "stationary source" of ammonia under Ohio law, *see* Ohio Admin. Code § 3745-31-01, Ohio EPA claimed that the Companies needed a permit to install and operate (a "PTIO") the waste site. *Id.* at PageID 167 (citing Ohio Rev. Code § 3704.05). The complaint contained one count premised on the Companies' violation of Ohio Admin. Code § 3745-31-02. *Id.*

A judge in the Greene County Court of Common Pleas entered a Consent Order and Final Judgment ("Consent Decree") against the Companies on April 25, 2022. *See* Doc. No. 4. The Consent Decree permanently required the Companies to fully comply with Ohio EPA's orders. *Id.* at PageID 206. Failure to do so subjected them to daily financial penalties. *Id.* at PageID 209.

Additionally, the Consent Decree ordered the Companies to pay a civil penalty of $75,000, to be held in abeyance provided that they fully comply with the Consent Decree. *Id.* at PageID 207-08.

The Consent Decree also imposed three primary requirements. First, it required the Companies to submit a PTIO application for the waste tank. *Id.* at PageID 206–07. This included all the measures that Ohio EPA required the Companies to impose as a condition for receiving their PTIO. *Id.*; *see* Ohio Admin. Code § 3745-31-02 (the PTIO requirement). Second, the Companies needed to conduct a Best Available Technology ("BAT") evaluation "to determine what measures are available to reduce the emissions" of ammonia then occurring. *Id.* at PageID 207; *see* Ohio Admin. Code § 3745-31-05(A) (the BAT requirement). "This evaluation [would] include the feasibility of both active and passive measures and operating procedures that minimize emissions including the physical modification and replacement of the waste tank." *Id.* Third, the Companies had to "submit a modeling study that identifies the level of emissions from the waste tank needed to comply with the Ohio EPA Air Toxics Policy" under Ohio law. *Id.*; *see* Ohio Rev. Code § 3704.03(F)(4) (the air toxics emissions modeling study requirement).

**B. The Federal Lawsuit**

Ohio EPA's Greene County lawsuit did not satisfy the Citizens. So, before the Consent Decree issued in state court, they sued in this Court on April 18, 2022. Doc. No. 1. Their suit alleges that the Companies, Ohio EPA, and U.S. EPA are violating the CAA and Ohio environmental law. *Id.* at PageID 2. The complaint contains three claims. First, the Citizens claim that the Companies installed the waste site—an air contaminant source—without applying for, and obtaining, a PTIO. *Id.* at PageID 2, 9 (citing Ohio Admin. Code § 3745-31-02). The waste site in question, they claim, was never identified in the Companies' prior PTIO as a source of air contaminants. *Id.* at PageID 10. Nor did the Companies submit any emissions calculations for the waste site to justify an exemption from the PTIO requirement. *Id.* Second, they allege the

3

Companies had to employ BAT to reduce air emissions, both as a requirement to receive a PTIO and to comply with Ohio environmental law. *Id.* at PageID 11-13 (citing Ohio Admin. Code § 3745-31-05(A)(3)(a)). Third, the Citizens claim that the Companies had to first identify the source of toxic air contaminants and perform air toxic modeling for ammonia before installing and operating a source of toxic air contaminants. *Id.* at PageID 13-15 (citing Ohio Admin. Code § 3745-144 and Ohio Revised Code § 3704.03(F)(4)).

The Ohio EPA, the Companies, and the U.S. EPA each filed motions to dismiss. Doc. Nos. 5, 6, 15. On March 13, 2023, the Court granted the Ohio EPA's and the U.S. EPA's motions. Doc. No. 41.

However, the Court denied the Companies' motion to dismiss. *Id.* The Companies' motion was based upon the argument that the Ohio EPA was diligently prosecuting the alleged violations. Doc. No. 6 at PageID 233. The complaint filed in Greene County, the Companies argued, was pending on April 15, 2022—before the Citizens filed their suit on April 18, 2022. *Id.* at PageID 239–40. Likewise, the Companies contended that the Consent Decree covers the PTIO, BAT, and air toxics modeling requirements that the Citizens seek to impose here. *Id.* at PageID 241–44.

The Court determined that it would be more suitable to consider the diligent prosecution issue at summary judgment, with the benefit of a more complete record. Doc. No. 41 at PageID 547. The Court ordered the parties to complete limited discovery and file cross-motions for summary judgment on this issue. *Id.* at PageID 548. The parties filed cross-motions for summary judgment in June 2023. Doc. Nos. 47, 48.

### C. The Greene County Amended Consent Decree

On September 25, 2023, the Companies filed a notice with the Court. Doc. No. 60. The notice informed the Court that the Consent Decree entered by the Greene County Court was amended on September 22, 2023 ("Amended Consent Decree"). *Id.* at PageID 753. The Amended

4

Consent Decree requires the Companies to: (1) stop accepting feedstock at the waste site by October 1, 2023; (2) dispose of treated digestate from the waste site by December 15, 2023; (3) remove and dispose of all material in the digester by January 15, 2024; (4) submit documentation to Ohio EPA demonstrating that the digester and associated equipment have been cleaned out; and (5) notify Ohio EPA that all operations at the waste site have permanently shut down by January 31, 2024. *Id.* at PageID 763-65. Finally, the Amended Consent Decree ordered the Companies to pay a civil penalty of $100,000, to be held in abeyance provided that they fully comply with the Amended Consent Decree. *Id.* at PageID 765.

The Citizens filed a motion to strike the notice and remove it from the Court's consideration. Doc. No. 61. The Companies responded, asserting that the Court must take judicial notice of the Amended Consent Decree. Doc. No. 62.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) and (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the

5

nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he non-moving party . . . may not rest upon [his or her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted).

### III. LAW AND ANALYSIS

#### A. Motion to Strike Amended Consent Order

Before considering the parties' cross motions for summary judgment, the Court must decide whether to strike the Amended Consent Order from the record. Federal Rule of Evidence 201 governs judicial notice of adjudicative facts. Fed. R. Evid. 201(a). A "court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)-(2). When a party requests judicial notice and supplies the court with the necessary information, the Court "must take judicial notice[.]" Fed. R. Evid. 201(c)(2). District courts in the Sixth Circuit have taken judicial notice of consent decrees issued in related cases. *See, e.g., D.L. Braughler Co., Inc. v. Ky.*, 271 F.Supp.2d 937, 940 (E.D. Ky. 2003); *Wilson v. T-Mobile USA, Inc.*, No. 2:16-cv-526, 2017 WL 3457034, at *1, n. 1 (S.D. Ohio Aug. 11, 2017).

Here, the Amended Consent Decree is a public record issued by another court in a related case. *See* Doc. No. 60-1. Therefore, the Court will take judicial notice of the Amended Consent Degree. The Citizens' motion to strike the Amended Consent Decree from the record is thus denied.

### B. The Diligent Prosecution Bar

The only issue in the cross motions for summary judgment is whether the Citizens' suit against the Companies is barred by the "diligent prosecution bar." Ordinary citizens may sue to enforce the CAA under the "citizen suit" provision, 42 U.S.C. §§ 7604(a)(1)–(2).[1] However, this provision has limits.

The relevant limitation here is premised on 42 U.S.C. § 7604(b)(1)(B), which imposes what is commonly referred to as "the diligent prosecution bar." *See, e.g.*, *Grp. Against Smog & Pollution, Inc. v. Shenango* (hereinafter, "*G.A.S.P.*"), 810 F.3d 116, 123–25 (3d Cir. 2016). The CAA notes that citizens may not sue a violator if the government "has commenced and is diligently prosecuting a civil action . . . to require compliance with the standard, limitation, or order[.]" 42 U.S.C. § 7604(b)(1)(B). Under this doctrine, "[g]enerally speaking, when the contours of a private plaintiff's suit and the Government's suit coincide . . . the former must be dismissed." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 476 (6th Cir. 2004) (citations omitted). In determining whether the diligent prosecution bar applies, the Court may look to the language in each lawsuit's complaint as well as any consent decrees issued in the government's case. *See, e.g., Cox v. Bd. Of Cnty. Comm'rs of Franklin Cnty.*, No. 2:18-cv-1631, 2021 WL 2042629, at *12 (S.D. Ohio May 21, 2021).

"Diligence 'is presumed,' and 'the burden for proving non-diligence is heavy.'" *Cox v. Bd. of Cnty. Comm'rs of Franklin Cnty.*, 436 F. Supp. 3d 1070, 1081 (S.D. Ohio 2020) (first quoting *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008); and then quoting *Ohio Valley Env't Coal., Inc. v. Maple Coal Co.*, 808 F. Supp. 2d 868, 883 (S.D. W. Va. 2011)). In the context of a consent decree, courts have framed the inquiry this

---

[1] Another section of the CAA, § 7604(a)(3), permits citizen suits under additional circumstances. This provision is not invoked in the pleadings or any party's argument, so it is inapplicable to this lawsuit.

7

way: "if the consent decree is a reasonable settlement likely to bring about compliance with the Act, it also demonstrates diligent prosecution." *United States v. Metro. Water Reclamation Dist. of Greater Chi.*, 792 F.3d 821, 825 (7th Cir. 2015) (Easterbrook, J.); *see also, e.g.*, *Piney Run*, 523 F.3d at 459 ("[E]nforcement action will be considered diligent where it is capable of requiring compliance with the Act and is in good faith calculated to do so" (internal quotation marks omitted)). Courts take this deferential view because, as the Sixth Circuit has stated, they ought not "second-guess[] . . . the EPA's assessment of an appropriate remedy . . . after the entry of [consent] decrees." *Ellis*, 390 F.3d at 477. In essence, this provision permits citizens to sue "where the EPA has failed to do so, not where the EPA has acted but has not acted aggressively enough in the citizens' view." *Id.* (internal quotation marks omitted).

Courts applying the diligent prosecution bar essentially ask two questions: after comparing the consent decree's terms to the terms of the citizens' complaint, *see G.A.S.P.*, 810 F.3d at 126, (1) do the complaint and consent decree both seek compliance with "the very same standard, order, or limitation," *Cox*, 436 F. Supp. 3d at 1080, meaning "the contours of [both suits] coincide" so much so that "the former must be dismissed," *Ellis*, 390 F.3d at 461; and (2) is the consent decree "a reasonable settlement likely to bring about compliance with the" CAA. *Metro. Water Reclamation Dist. of Greater Chi.*, 792 F.3d at 825.

### 1. Required Compliance with the Same Standards

The Citizens have not shown that their lawsuit and Ohio EPA's lawsuit were brought to require compliance with different standards. The Citizens' complaint contains three claims: (1) the Companies operated the waste site without a PTIO in violation of Ohio Admin. Code § 3745-31-02 (Doc. No. 1 at PageID 2, 9); (2) the Companies failed to employ BAT in violation of Ohio Admin. Code § 3745-31-05(A)(3)(a) (*Id.* at 11-13); and (3) the Companies failed to perform air toxic modeling in violation of Ohio Revised Code § 3704.03(F)(4) (*Id.* at 13-15). The Citizens

8

argue that because Ohio EPA's complaint contains only one of the Citizens' claims—the Companies' failure to obtain a PTIO in violation of Ohio Admin. Code § 3745-31-02 (Doc. No. 1 at PageID 167)—the two lawsuits do not seek compliance with the same standards. Doc. No. 49 at PageID 613-15.

While the two complaints are not identical, Ohio EPA's single claim encompasses the Citizens' two other claims. In order to apply for and obtain a PTIO in compliance with Ohio Admin. Code § 3745-31-02, the Companies would have to submit information regarding BAT under Ohio Admin. Code § 3745-31-05(A)(3)(a) and air toxics under Ohio Revised Code § 3704.03(F)(4). The initial Consent Decree confirms that Ohio EPA sought to require compliance with the same three standards in the Citizens' complaint. *See* Doc. No. 4. The Consent Decree required that—within 60 days of its entry—the Companies: (1) apply for a PTIO; (2) complete a BAT evaluation; and (3) submit an air toxics modeling study. Doc. No. 4 at PageID 206-07. These requirements directly coordinate with the three claims listed in the Citizens' complaint.

Finally, the Amended Consent Decree does not contradict this conclusion. By shutting down the Companies' waste site, the Amended Consent Decree resolves the claims in the Citizens' complaint. *See* Doc. No. 60-1 at PageID 758-59. Thus, the Citizens' and Ohio EPA's lawsuits were brought to require compliance with the same standards under the CAA and Ohio law.

### 2. Reasonable Settlement Likely to Bring About Compliance

The Citizens have also failed to show that the initial Consent Decree is not "a reasonable settlement likely to bring about compliance with the" CAA. *See Metro. Water Reclamation Dist. of Greater Chi.*, 792 F.3d at 825. The Citizens raise three arguments as to why the initial Consent Decree is insufficient to trigger the diligent prosecution bar. First, they argue that because the Consent Order does not require *immediate* compliance, the diligent prosecution bar is not applicable. Doc. No. 49 at PageID 617. Second, the Citizens assert that the initial Consent Decree

9

did not effectively require compliance because the Companies did not comply with its requirements for over one year. *Id.* at 618. Third, they contend that the initial Consent Decree is unreasonable because it is too "lenient" and does not impose a civil penalty large enough to adequately punish the Companies. *Id.* at 620-23.

These arguments do not show that the initial Consent Decree was unreasonable or unlikely to bring about compliance. First, it is common for consent decrees to implement compliance schedules that give defendants time to comply with certain agency regulations. *See, e.g., Weinberger v. Romero-Barcelo*, 456 U.S. 305, 318 (1982) (concluding that "the administrative practice has not been to request immediate cessation orders" and compliance schedules are typically adopted); *DP Marina, LLC v. City of Chattanooga, Tenn.*, 41 F.Supp.3d 682, 684, 690 (E.D. Tenn. 2014) (finding that a consent decree with a multi-year schedule for implementation of Clean Water Act requirements barred citizen plaintiffs' claims under the doctrine of *res judicata*[2]). While immediate compliance is not required by the initial Consent Decree, courts take a deferential view of consent decrees negotiated by agencies. *See Ellis*, 390 F.3d at 477. The initial Consent Decree is still "likely to bring about compliance with the" CAA over the course of 180 days. *See Metro. Water Reclamation Dist. of Greater Chi.*, 792 F.3d at 825. Therefore, the compliance schedule in the initial Consent Decree does not establish a lack of diligence in this case. *See Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty., MD.*, 523 F.3d 453, 459 (4th Cir. 2008).

Second, even if the Companies were not complying with the initial Consent Decree, this lawsuit would not be the appropriate basis upon which to seek relief. The Sixth Circuit has explained that "alleged post-consent-decree violations constitute 'new' claims that must separately

---

[2] The Court notes, without holding, that the Citizens' claims may also be barred by the doctrine of *res judicata*. *See DP Marina, LLC*, 41 F.Supp.3d at 689 ("Diligent prosecution contemplates action that is ongoing by the government, whereas the res judicata analysis in this context necessarily involves actions that have previously been taken by the government and have reached a final resolution on the merits").

comply with the notice provisions of the Clean Air Act[.]" *Ellis*, 390 F.3d at 474. If defendants are not complying with a consent decree issued by another court, citizen plaintiffs may: (1) petition the enforcement agency to enforce the consent decree; (2) petition the enforcement agency or the issuing court to modify the consent decree; and/or (3) file a new lawsuit after supplying the required notice. *StarLink Logistics Inc. v. ACC, LCC*, 642 F.Supp.3d 652, 690 (M.D. Tenn. 2022) (citing *Ellis*, 390 F.3d at 477). The Citizens' allegations[3]—that the Companies were not complying with the initial Consent Decree—are thus insufficient to show that the initial Consent Decree was not reasonably likely to bring about compliance with the statute.

Third, while the initial Consent Decree imposed a $75,000 fine held in abeyance, this is not an unreasonable settlement. While the Citizens can sue where the government has failed to do so, they are not entitled to sue when the government chooses to implement a less severe punishment than the Citizens sought. *See Ellis*, 390 F.3d at 477. Allowing citizens to file suit "to seek the civil penalties that the [government] chose to forgo" would restrict the government's discretion to enforce the CAA. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 61 (1987) (concluding that allowing citizens to sue just to seek additional civil penalties "would change the nature of the citizens' role from interstitial to potentially intrusive"). Thus, the initial Consent Decree was not an unreasonable settlement and was likely to bring about compliance.

Finally, the existence of the Amended Consent Decree does not change this conclusion. Instead of requiring the Companies to comply with the relevant regulations under Ohio law, the Amended Consent Decree orders the Companies to shut down their digester by conducting a series

---

[3] Additionally, the Citizens' motion for summary judgment does not cite to evidence in the record showing that the Companies have failed to comply with the deadlines set forth in the initial Consent Decree. *See* Doc. No. 49 at PageID 618-20.

of tasks by January 31, 2024.  Doc. No. 60 at PageID 763-65.  Therefore, the Amended Consent Decree is also a reasonable settlement likely to bring about compliance with the relevant regulations.

Accordingly, the Citizens' claims are barred by Ohio EPA's diligent prosecution of the alleged violations, and summary judgment in favor of the Companies is appropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court: (1) **DENIES** the Citizens' motion to strike (Doc. No. 61); (2) **DENIES** the Citizens' motion for partial summary judgment (Doc. No. 49); (3) **GRANTS** the Companies' motion for summary judgment (Doc. No. 47); and (4) **TERMINATES** this case on the docket.

IT IS SO ORDERED.

February 12, 2024                                  s/Michael J. Newman
                                                   Hon. Michael J. Newman
                                                   United States District Judge